UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COMPREHENSIVE PHARMACY SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:17 CV 16 CDP ) |
| ASCENSION HEALTH RESOURCE AND SUPPLY MANAGEMENT GROUP, LLC (d/b/a THE RESOURCE GROUP), | ) ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

This action is brought by plaintiff Comprehensive Pharmacy Services, LLC (CPS), against defendant Ascension Health Resource and Supply Management Group, LLC d/b/a The Resource Group (TRG), a wholly-owned subsidiary of Ascension Health Alliance (Ascension). CPS and TRG were parties to a Services Agreement and its related Statement of Work 8 (SOW 8), under which CPS was responsible for the oversight and management of acute pharmacy related services at 83 healthcare sites within Ascension's network (the TRG Participants). Statement of Work 8 contained a Guaranteed Savings clause providing that if CPS failed to deliver targeted savings for fiscal year 2016, it was obligated to refund a portion of its consulting fees to TRG. Approximately one year into the term of

1

SOW 8, TRG terminated the contract, asserting that CPS owed and failed to pay it a $5.4 million refund.

CPS filed this suit, alleging that TRG breached the contract and has been unjustly enriched, and seeking a declaratory judgment that it does not owe a refund. CPS alleges that TRG improperly terminated SOW 8; it claims that any refund was not yet due as TRG had not provided CPS with "all the data required" to calculate the refund as set forth under the Guaranteed Savings clause. TRG answered and asserted two breach of contract counterclaims, both seeking payment of the alleged $5.4 million refund.

CPS moved for summary judgment on liability as to its own breach of contract claim and related declaratory judgment claim. It also seeks summary judgment on TRG's "mirror image" counterclaims. CPS argues that summary judgment is proper as TRG did not meet its contractual obligation to provide all the data required to calculate the refund and TRG's termination of the agreement therefore constitutes breach.

Because I conclude that the Guaranteed Savings clause did not require all TRG Participants to submit the required data before any refund was due, I will deny CPS's motion for summary judgment.

## The Contract

On June 9, 2014, CPS and TRG entered into a Consulting and Professional Services Agreement. This agreement contemplates the execution of additional contracts – Statements of Work – to provide terms for specific projects. On July 15, 2015, the parties entered into Statement of Work 8. SOW 8 had a term of three years, and could only be terminated for material breach. Under SOW 8, CPS was to receive monthly consulting fees from TRG for providing the oversight and management of acute pharmacy related services at various health care sites associated with TRG, called "TRG Participants." Relevant to SOW 8, there were 83 TRG Participants, each of which belonged to a Regional Health Ministry.

Under the heading "Guaranteed Savings," SOW 8 provides that, each fiscal year and under defined circumstances, CPS might be obligated to refund a portion of its consulting fees if it failed to deliver targeted savings. Specifically, for fiscal year 2016 (which ran from July 1, 2015 through June 30, 2016), the Guaranteed Savings clause provides that:

> CPS will deliver Regional Health Ministry savings at least equal to the total Participant Consulting Fees paid by The Resource Group. Should CPS fail to achieve this level of savings, CPS will refund the shortfall in the form of a check to the Regional Health Ministry within thirty (30) days of receiving all the data required from the Regional Health Ministry required to calculate the shortfall.

ECF No. 26-4 at 32.

In order to determine the savings delivered by CPS, SOW 8 required that the parties calculate a "pharmaceutical baseline" reflecting pharmacy costs for fiscal year 2015 (which ran from July 1, 2014 to June 30, 2015) at each of the TRG Participants. Under the express terms of SOW 8, the pharmaceutical baseline must be "calculated from actual Participant financials and other financial data, provided to CPS by Participant." ECF No. 26-4 at 15. The agreement further stated that miscellaneous adjustments to the pharmaceutical baseline would be reviewed and agreed upon by CPS and TRG. Then, the baseline was to be compared to "[t]he actual pharmaceutical cost" for fiscal year 2016 to determine the savings achieved. ECF No. 26-4 at 16.

Throughout fiscal year 2016, TRG collected financial data from its Participants and submitted it to CPS to calculate the baseline and pharmacy costs. There were numerous difficulties in attempting to procure this data from the various participants and Regional Health Ministries, and the communications provided by the parties demonstrate that they initially attempted to work together to obtain data from all the Regional Health Ministries. On August 25, 2016 representatives from both parties met. At this meeting, CPS presented a power point addressing the status of TRG's provision of financial data, adjustments to the data and the calculation of a refund. The power point stated that "64 hospital financials [were] completed with reasonable confidence, including those

employing alternative methodology (6)" and that "[r]easonable adjustments [were] to be discussed." ECF No. 26-17 at 14. CPS indicated that due diligence was continuing on the remaining 19 hospitals because of various factors, including "[m]issing or unusable data," and "[s]ignificant changes in services that need to be normalized." *Id.* CPS further stated that the "current ministry level shortfall of fees is $2.97 million," and requested reasonable and contractual adjustments to account for "hyperinflation for top 25 medications" and "blocked 3rd party negotiated agreements." *Id*. at 21.

Approximately a month later, in a letter dated September 22, 2016, TRG stated that: (1) "[a]ll calculations for TRG's 2016 fiscal year are now complete" and (2) "the current total refund amount owed [was] $5,362,621." The letter demanded that "CPS refund the full amount owed within thirty (30) days." ECF No. 26-18. On September 30, 2016, CPS responded by stating that "[w]e do acknowledge there will be a refund due for Statement of Work No. 8 . . . once the final number is determined by CPS and The Resource Group." ECF No. 26-19. In the same response, CPS asserted that the calculations "will not be complete until we discuss and come to a mutual agreement on adjustments for operational and other changes that have materially impacted pharmacy costs." *Id.* On October 14, 2016, TRG responded and reiterated its demand for the refund. ECF No. 26-20.

On October 25, 2016, TRG provided its Notice of Termination to CPS. It is undisputed that as of the date of termination, CPS had received required data for only 69 of the 83 TRG participants. CPS has not refunded any amount to TRG.

**Discussion**

In its complaint, CPS alleges that TRG was not entitled to a $5.4 million refund under SOW 8 and that TRG's early termination of the Services Agreement and SOW 8 breached the contract. CPS contends that the Guaranteed Savings clause of SOW 8 expressly required TRG to provide CPS with "all the data required" to calculate the amount of a refund before any refund was due. Because TRG had not provided data for nearly 17 percent of the healthcare sites, CPS contends TRG failed to satisfy this contractual pre-condition. CPS further alleges the claimed refund never became due and TRG improperly terminated the contract. Based on TRG's improper termination, CPS argues it is entitled to summary judgment in its favor on liability as to CPS's breach of contract claim (Count I), its related declaratory judgment claim (Count II), and TRG's "mirror image" counterclaims.[1] In response, TRG argues that CPS incorrectly relies on a flawed

---

[1] CPS also addresses TRG's allegation (in both Counts I and II of its counterclaim) that CPS failed to provide adequate expertise, services, and technical deliverables. CPS argues that, to the extent TRG intended the above allegation as an independent basis for a claim of breach of contract, TRG fails to state a claim for relief and the Court should dismiss the claim. TRG, in its response, clarifies that the allegation *does not constitute a separate cause of action*. ECF No. 35 at 13. Accordingly, I need not further consider CPS's arguments requesting dismissal.

interpretation of the Guaranteed Savings clause in SOW 8 and that the evidence in the record precludes summary judgment in favor of CPS.

The Guaranteed Savings clause in SOW 8 states, in part:

> For The Resource Group's fiscal year 2016, CPS will deliver Regional Health Ministry savings at least equal to the total Participant Consulting Fees paid by The Resource Group. Should CPS fail to achieve this level of savings, CPS will refund the shortfall in the form of a check to the Regional Health Ministry within thirty (30) days of receiving all the data required from the Regional Health Ministry required to calculate the shortfall.

ECF No. 26-4 at 32. It is undisputed that this provision requires the Regional Health Ministries (made up of TRG participants) to provide financial data to CPS to enable CPS to calculate the amount of savings and potential refund. However, CPS further interprets the clause to call for the submission of all data – in the aggregate from all Regional Health Ministries (and their related participants) – before CPS's liability to pay any refund to TRG arose. I conclude that the plain reading of SOW 8 cannot support CPS's interpretation.

It is well settled that "'[u]nequivocal language in written contracts must be given its plain meaning and enforced as written.'" *Citimortgage, Inc. v. Chicago Bancorp, Inc.*, 2014 WL 4415261, at *3 (E.D. Mo. Sept. 8, 2014) (citing *Cmty. Fed. Sav. & Loan Ass'n of Overland v. Gen. Cas. Co. of Am.*, 274 F.2d 620, 624 (8th Cir. 1960)). Moreover, "[i]f the contract's terms are unambiguous, we determine the parties' intent only from the words of the contract itself." *Homefield*

7

*Commons Homowners Assn. v. Roy H. Smith Real Estate Co.*, 500 S.W.3d 910, 914 (Mo. Ct. App. 2016) (citation omitted). The terms here are not ambiguous.

The plain language of the Guaranteed Savings Clause does not require the submission of all financial data for all Participants, as urged by CPS, to trigger CPS's liability to pay a refund. The provision clearly states that once a Regional Health Ministry submits the required data, the refund is due to the Ministry thirty days later. Thus, CPS's claim that TRG failed to fulfill the contractual pre-condition to provide "all the data" before terminating is not a basis for summary judgment as SOW 8 did not contain such a requirement.

In its reply brief, CPS argues that this interpretation of the contract is "newly contrived"[2] and that a later part of the Guaranteed Savings provision supports its interpretation of the earlier clause. That part of the provision states:

> For any new Participant or Regional Health Ministry on-boarded after the deployment of the SOW, CPS will deliver Regional Health Ministry savings at least equal to the total aggregate Participant Consulting Fees paid by the Regional Health Ministry. Should CPS fail to achieve this level of Regional Health Ministry savings within the first year of the program, CPS will refund the shortfall in the form of a check to the Regional Health Ministry within thirty (30) days of receiving all the data required from the Regional Health Ministry required to calculate the shortfall.

---

[2] CPS presented evidence that TRG always made its demands in the aggregate and rejected any attempts by CPS to deal with the problems "piecemeal." Factual disputes exist about what the sides said to one another at the August 25 meeting as well as about the parties' dealings throughout the contract. But these disputes are not material to my interpretation of the contract, which is based on the words of the contract. The disputes may, of course, be relevant to an ultimate fact-finder considering both parties' allegations of breach and claims of damages.

ECF No. 26-4 at 32. CPS argues that because this clause specifies a circumstance where the savings will be compared to the fees "paid by the [new] Regional Health Ministry," while the earlier compared the savings to the fees "paid by The Resource Group," the first clause must require that all the data for all participants had to be provided. I do not agree. This clause was necessary to provide some basis for dealing with Participants or Regional Health Ministries that entered the system part-way through the year. The clause simply explained how the parties would calculate savings and fees with regard to those new participants. The language in both the earlier clause and the later clause states that "CPS will refund the shortfall in the form of a check to *the* Regional Health Ministry within thirty (30) days of receiving all the data required from *the* Regional Health Ministry required to calculate the shortfall." (emphasis added). The contract did not require that complete data from all the Regional Health Ministries must be provided before *any* Regional Health Ministry would receive its refund.

Accordingly,

**IT IS HEREBY ORDERED** that CPS's motion for summary judgment [25][27] is **DENIED**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of April, 2018.