UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| COMPREHENSIVE PHARMACY SERVICES, LLC, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:17 CV 16 CDP |
|  | ) |  |
| ASCENSION HEALTH RESOURCE AND SUPPLY MANAGEMENT GROUP, LLC (d/b/a THE RESOURCE GROUP), | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# MEMORANDUM AND ORDER

The background of this dispute is set out in the Memorandum and Order on plaintiff's summary judgment motion that was entered earlier today. This order rules on two pending discovery motions: Plaintiff's Motion to Compel Production of Documents [58] and Dr. Patricia Maryland's Motion to Quash Plaintiff's Subpoena Ad Testificandum [69]. For the reasons that follow, I will grant the Motion to Compel and will deny the Motion to Quash. This Order also provides instructions to the parties regarding the Case Management deadlines and trial setting in the case.

# CPS's Motion to Compel

In its First Request for Production, plaintiff Comprehensive Pharmacy Services, LLC (CPS) sought documents held by defendant Ascension Health Resource and Supply Management Group, LLC, d/b/a The Resource Group's (TRG's) Participants relating to the underlying material operating and other changes that occurred between fiscal year 2015 and fiscal year 2016.[1] CPS maintains these changes "gave rise to the need for contractually required adjustments, i.e., changes that materially altered pharmaceutical costs at TRG Participants." ECF No. 59 at 4. CPS argues the information requested is central to CPS's claim that TRG breached the contract by failing to negotiate required adjustments to its savings calculation for changes that took place at TRG Participants during 2015-2016. In its Response in Opposition to Plaintiff's Motion

---

[1] Specifically, CPS requested the following:
- All documents concerning any cost-saving initiative The Resource Group implemented at any TRG Participant before CPS was hired, including without limitation any initiative for which the baseline calculation under SOW was adjusted. Req. No. 4.
- All documents concerning any actual, potential, requested or considered adjustments under SOW 8 to any shortfall calculation, including, but not limited to, adjustments based on case mix indices, drug hyper-inflation, The Resource Group's decision to switch vendors from Baxter to Hospira, or The Resource Group's decision not to allow CPS to switch compounding vendors at TRG Participants. Req. No. 10.
- All documents concerning: (i) the case mix index at each TRG Participant; (ii) hyper-inflation at each TRG Participant . . . and (iv) The Resource Group's decision not to allow CPS to switch compounding vendors at TRG Participants. Req. No. 11.
- All documents concerning expanded services that may have altered the economic basis of SOW 8 . . . . Req. No. 15.
- All documents concerning changes in hospital administration that altered the economic basis of SOW 8 . . . . Req. No. 16.

ECF No. 59-4.

to Compel, TRG contends that the documents requested are neither relevant nor proportional to the needs of the case.

The Federal Rules of Civil Procedure relating to discovery permit each party to serve the opposing party with document requests and interrogatories which relate to "any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2) and 34(a). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where a party fails to cooperate in discovery, the propounding party may move the Court "for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting discovery to explain why discovery should be limited." *CitiMortgage, Inc. v.*

3

*Allied Mortg. Group, Inc.*, 4:10CV1863 JAR, 2012 WL 1554908, at *2 (E.D. Mo. May 1, 2012).

I find that the information requested by CPS is relevant to its claim that TRG breached SOW 8 by failing to negotiate certain adjustments. SOW 8 requires the negotiation of miscellaneous adjustments in order to calculate the pharmaceutical baseline target – which in turn is used to calculate savings and any refund. The pertinent provision of SOW 8, Section II E, states the following:

> [A] Pharmaceutical Baseline Target will be established for each Participant and in the aggregate for each Regional Health Ministry. . . . The Pharmaceutical Baseline Target will be calculated from actual Participant financials and other financial data, provided to CPS by Participant . . . . Miscellaneous adjustments will be reviewed and mutually agreed upon by CPS and The Resource Group, (for example: late drug spend invoices posted to Participants financials in baseline period, but originated in a prior period).

ECF No. 26-4 at 15. TRG argues that the "miscellaneous adjustments" referred to above should be limited to minor accounting discrepancies and not include the type of material changes alleged by CPS. However, although Section II E does set forth an example of an accounting adjustment, the full scope of permissible miscellaneous adjustments is not limited or defined by the contract. The evidence before me indicates that CPS and TRG both contemplated and discussed significant adjustments to pharmaceutical costs. CPS has made the necessary threshold showing of relevance.

TRG also argues I should deny the motion as CPS's requests are overbroad and not proportional to the needs of this case. However, after the parties met and conferred, CPS narrowed the scope of its requests and reduced the number of TRG participants it sought data from to 26. Moreover, any burden in production must be considered in relation to the amount in controversy – which here is alleged to be at least $5.4 million. Thus, I find that CPS's requests for production (4, 10, 11, 15 and 16) are both relevant and proportional, and I will grant CPS's motion to compel as set forth below.

## Dr. Patricia Maryland's Motion to Quash

Plaintiff CPS issued a Notice of Deposition and served a Subpoena seeking to take the deposition of Dr. Patricia Maryland. Dr. Maryland is the Executive Vice President of Ascension Health Alliance, which is the parent company of defendant/counter-plaintiff TRG, among others. She is also the President and Chief Executive Officer of Ascension Health, d/b/a Ascension Healthcare, a "sister company" of TRG.

TRG argues that Dr. Maryland should not be subjected to a deposition because she is a high-level corporate executive[2] and a deposition would be unduly

---

[2] They also argue that she is a "non-party" and insisted that she be served with a Rule 45 subpoena after CPS first noticed her deposition. Now that CPS has served a Rule 45 subpoena in addition to the Rule 30 notice, TRG argues that CPS has waived any argument that she was subject to a Rule 30 notice. This dispute makes no difference to the outcome of this motion, but in any event, the TRG documents show that Dr. Maryland should not be considered a "non-party" to this case.

5

burdensome.[3]  TRG also argues that she does not have any role in the day-to-day operation of TRG, and that CPS is obligated to use less burdensome means to obtain the information.  In particular, TRG argues that CPS must take the depositions of lower-level personnel before it should be allowed to question Dr. Maryland.

Plaintiff asserts that Dr. Maryland was involved in the decision to terminate the contract.  They have provided TRG documents (filed under seal because designated confidential by TRG) showing her involvement in strategy meetings and other discussions about the CPS contract that is the subject of this lawsuit.  Those documents show that TRG executives dealing with the CPS contract, including the executive that signed TRG's demand letters and letter terminating the CPS contract, had direct and numerous discussions with Dr. Maryland about CPS's performance under the contract.  This is more than sufficient to meet the plaintiff's "threshold showing of relevance."  *Hofer*, 981 F.3d at 377.

Defendant's argument that because Dr. Maryland is a high executive she should not be subject to deposition until all other means of discovery have been exhausted is simply incorrect.  The so-called "Apex" doctrine on which defendant relies "is normally aimed at high level decision makers who have no particular

---

[3] It also argues that the request to take her deposition was premature because the Court had not ruled on the pending motion for summary judgment.  The Court has now ruled, so this argument no longer applies.

direct knowledge of the facts pertaining to the particular lawsuit." *Wal-Mart Stores, Inc. v. Vidalakis*, 5:07MC00039-RTD, 2007 WL 4591569 (W.D. Ark. Dec 28, 2007). Plaintiff has made a threshold showing that Dr. Maryland has direct knowledge of facts pertaining to this case: she was critical of the CPS contract and directly expressed her criticism to the people working on the project, she was involved in numerous discussions about CPS's performance under the contract, and she was involved in the meetings leading to the termination.

Dr. Maryland's high position does not insulate her from the obligation to participate in discovery, and the Court will not require CPS to take depositions in any particular order. Plaintiff argues that Dr. Maryland's displeasure with CPS was a driving factor in defendant's decision to terminate the contract. The information sought by plaintiffs about Dr. Maryland's decision-making cannot be obtained from others, and CPS is entitled to ask her about it directly. Although sitting for a deposition is always a burden, nothing presented shows that it poses any unusual or unfair burden in this case, given the amount of money at stake and the fact that TRG is a counterclaim plaintiff as well as a defendant. Plaintiff has agreed to take the deposition at Dr. Maryland's counsel's office, at a date convenient to her, and to limit the questions to issues relevant to this case.

**Scheduling Issues**

I recently granted the parties' joint request to modify the Case Management Order deadlines in this case, but did not set a new trial date. I recognize that the delay in my ruling on the pending motions may have affected the parties' discovery, and so I will direct them to meet and confer again to see if any additional modifications to the Case Management Order are appropriate. Following this meeting, the parties should file a joint statement setting out any additional modifications needed for the Case Management Order, and setting out any potential trial dates on which they can agree. Their previous motion requested a trial date not sooner than December of 2018. The following trial settings are currently available to the Court: December 3, 2018, December 10, 2018, and January 7, 2019. If the parties cannot agree on any dates for trial, the report should so state, and I will set a telephone conference and set a date. The report should also state whether the parties' previous estimate that the trial would last three to five days is still accurate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff CPS's motion to compel [58] is **GRANTED**. Defendant is ordered to produce documents and information possessed by the identified 26 TRG Participants in response to Document Request

Nos. 4, 10, 11, 15, and 16 from CPS's First Request for Production (as narrowed pursuant to CPS's email and proposed stipulation dated August 15, 2017).

**IT IS FURTHER ORDERED** that the Motion to Quash Dr. Maryland's deposition [69] is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for leave to file [68] is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties shall meet and confer and file a joint report setting out any proposals for a trial date and any modifications to the Case Management Order no later than **April 26, 2018.**

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of April, 2018.